**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-13269

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ALVIS ALEXANDER BRICENO-YAJURES,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:25-cr-00040-JA-NWH-1

————————————

Before ROSENBAUM, GRANT and TJOFLAT, Circuit Judges.

PER CURIAM:

Alvis Alexander Briceno-Yajures appeals his sentence of 105 months' imprisonment for possession of a firearm and ammunition

by an illegal alien. Briceno-Yajures argues that his sentence is procedurally unreasonable because the District Court, in determining the offense level for robbery under the Sentencing Guidelines, erroneously applied a four-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(A) for abduction and a two-level enhancement for carjacking pursuant to U.S.S.G. § 2B3.1(b)(5).

## I.

A sentence imposed under the Guidelines is procedurally unreasonable if the district court failed to calculate the Guidelines sentencing range, failed to consider the sentencing factors of 18 U.S.C. § 3553(a), selected a sentence based on clearly erroneous facts, or failed to adequately explain the chosen sentence. *Gall v. United States,* 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007).

In this case, the defendant objected to several factual recitations in the presentence report.[1] The District Court heard the objections at the sentencing hearing and resolved them. Although the Court did not make explicit findings of the facts on which it based the defendant's sentence, it did so implicitly when, after hearing evidence and argument, it overruled the defendant's objections to facts set forth in the presentence report in support of the enhancements the court imposed.

Very early in the morning of July 30, 2024, Briceno-Yajures went on an armed robbery spree with two accomplices in Daytona

---

[1] The sentencing hearing was held in the afternoons of two days, September 2 and 3, 2025.

Beach, Florida, and committed two robberies. The first robbery occurred around 1:00 a.m. Briceno-Yajures and two accomplices met Victim-1 in the pool area of a motel and invited her up to their motel room on the second floor. Once in their room, Victim-1 became uncomfortable and tried to leave, but Briceno-Yajures pointed a gun at her and demanded that she take her clothes off. She complied. The accomplices then took her money and some of her personal effects and ran out of the motel room to a white Jeep SUV parked outside. *Id.*

While Victim-1 was putting her clothes on, Briceno-Yajures grabbed her by her hair and neck and dragged her outside the motel room and down the stairs to the SUV. As Briceno-Yajures was dragging her down the stairs, she called out to a witness. Briceno-Yajures attempted to put Victim-1 in the white Jeep against her will. The witness grabbed one of the victim's arms while Briceno-Yajures had the other and was pulling the victim into the SUV when a gunshot went off. Victim-1 escaped from Briceno-Yajures's grasp as he and his accomplices drove away in the SUV. Law enforcement found a bullet casing near where the victim and witness said the SUV was parked before Briceno-Yajures and the others drove off.

About three hours later that morning, Victim-2 was sitting with an acquaintance outside of her second-floor apartment, overlooking the parking lot where her car was parked, when the white Jeep SUV pulled up. Briceno-Yajures and one of his accomplices got

out of the SUV. Each pointed a firearm at Victim-2 and her acquaintance and then drove away in Victim-2's car. The second accomplice, who had owned Victim-2's car and still had a key, remained by the SUV. The victim and her acquaintance described one of the firearms used by Briceno-Yajures and his accomplice as being silver in color.

Within minutes of the carjacking, law enforcement performed a traffic stop on the white Jeep SUV and arrested Briceno-Yajures and one of his accomplices. Later, both Victim-1 and Victim-2 identified Briceno-Yajures and his accomplices as the perpetrators of their respective armed robberies. Briceno-Yajures and his accomplices were arrested and transported to the police station. At the time of Briceno-Yajures' arrest, law enforcement officers did a pat-down and searched the SUV but did not find a firearm.

Once at the police station, however, law enforcement officers did another pat down of Briceno-Yajures and found the firearm—the KelTec pistol—in his underwear, under his buttocks. The pistol had three live rounds of ammunition in it, including one in the chamber. A laboratory examination confirmed that the firearm and ammunition found in Briceno-Yajures' underwear matched the shell casing recovered at the scene of the motel armed robbery.

Based on these facts, the Court's probation officer calculated Briceno-Yajures' sentencing range, a base offense level of 20 for

robbery under U.S.S.G. § 2B3.1(a) and the enhancements challenged here. We consider now whether the District Court erred in applying the enhancements.

## II.

Section 2B3.1 of the Guidelines adds four levels to a defendant's offense level if a "person was abducted to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A). "'Abducted' means that a victim was forced to accompany an offender to a different location." *Id.* § 1B1.1 cmt. n.1(A); *see id.* § 2B3.1 cmt. n.1. "For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." *Id.* § 1B1.1 cmt. n.1(A).

In *United States v. Whatley*, we declined to adopt a categorical rule about whether U.S.S.G. § 2B3.1(b)(4)(A) may be applied "when a defendant moves victims inside a single building," instead choosing to take a case-by-case approach to the enhancement's application. 719 F.3d 1206, 1222 (11th Cir. 2013). In that case, the defendant bank robber took bank employees hostage inside the various bank branches he had targeted and forced them to move between the rooms but not outside of the buildings. We held that the District Court erred in applying the enhancement. *Id.* The ordinary meaning of "different location" would not apply to different rooms within one bank. We treated the bank as a single location, such that the enhancement for abduction was inapplicable. *Id.*

Here, the District Court did not clearly err in applying the § 2B3.1(b)(4)(A) four-level enhancement for abduction because Briceno-Yajures took the victim to a different location when he dragged her down the motel stairs and attempted to force her into a car parked on the street.

## III.

Section 2B3.1(b)(5) of the Guidelines adds two levels to a defendant's offense level "[i]f the offense involved carjacking." U.S.S.G. § 2B3.1(b)(5). The commentary to this guideline defines "carjacking" as "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." *Id.* § 2B3.1 cmt. n.1.

In *United States v. Kimble*, we interpreted the criminal carjacking statute, which requires that a motor vehicle be taken or attempt to be taken "from the person or presence of another by force and violence or by intimidation." 178 F.3d 1163, 1165 (11th Cir. 1999) (quoting 18 U.S.C. § 2119). We held that "the victim must be sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it" for a carjacking conviction to stand. *Id.* at 1168. "For a car to be within one's reach or control, it must be accessible." *Id.*

The defendant in *Kimble* entered a restaurant prior to opening, gathered the employees at gunpoint, and stole their personal effects as well as money from the safe. *Id.* at 1165. When asked who among the employees had a car, the supervisor answered that he did, and the defendant reached into the supervisor's pocket to take

his keys. *Id.* The defendant and his accomplice then left the scene in the supervisor's car. *Id.* On these facts, we held that the supervisor "was sufficiently near to his vehicle when [the defendant and his accomplice] robbed him of it to sustain a conviction under § 2119." *Id.* at 1168. The supervisor's "car was not several miles away, but parked right outside the restaurant," and had the supervisor "not been in fear for his safety, he could have reached the car and prevented its taking." *Id.*

We find no error in the District Court's application of § 2B3.1(b)(5)'s two-level enhancement carjacking because the victim was in the presence of her vehicle, and she feared for her life when Briceno-Yajures pointed a gun at her.

**AFFIRMED.**